# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS CRUZ,<br><br>    Petitioner,<br><br>v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>    Respondent. | No. 1:18-cv-00222-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

## I. Introduction

Plaintiff Juan Carlos Cruz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 18 and 19. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 9.

## II. Procedural Background

On January 26, 2015, Plaintiff filed the pending application for disability insurance benefits alleging disability beginning December 6, 2012. AR 15. The Commissioner denied the application initially on June 10, 2015, and upon reconsideration on August 14, 2015. AR 15. On August 19, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 15.

Administrative Law Judge Sharon L. Madsen presided over an administrative hearing on April 25, 2017. AR 34-53. Plaintiff appeared and was represented by an attorney and assisted by an interpreter. AR 34. Impartial vocational expert Cheryl Chandler (the "VE") also testified. AR 34.

On July 6, 2017, the ALJ denied Plaintiff's application. AR 15-27. The Appeals Council denied review on December 19, 2017. AR 1-3. On February 14, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony and Reports

Plaintiff (born September 17, 1964) lived with his wife, his nephew and his stepson. AR 37-38. He had constant pain in his back and sciatic pain in his right foot. AR 42. Walking was uncomfortable. AR 43. He had difficulty picking things up from the ground and could not kneel or climb stairs. AR 44-45. He took naproxen and used a topical pain reliever. AR 43, 46-47. Epidural injections helped only for a day or two. AR 46. Physical therapy was not helpful. AR 45. Plaintiff also had diabetes and high blood pressure. AR 43-44.

Plaintiff sometimes needed help showering and putting on his pants and socks. AR 39. He could heat food in the microwave, shop and run errands. AR 39. His nephew generally performed the household chores, but Plaintiff enjoyed cutting the lawn and working in the garden, working for up to 20 minutes before needing to rest. AR 39, 45. He went to church. AR 40. Plaintiff's doctor directed him to walk, which he was able to do for 20-30 minutes. AR 44. Plaintiff enjoyed watching television. AR 40. He lay down and rested three to four hours daily. AR 49.

Plaintiff completed the twelfth grade in Mexico. AR 39. Although Plaintiff was able to drive, he limited his time and distance because his feet became numb. AR 38. His previous jobs included stacking pallets of boxes in a shoe warehouse, loading potato trucks, driving a garbage truck and weighing cheese. AR 41-42. Plaintiff last worked on May 15, 2013. AR 42.

### B. Medical Records

Plaintiff was injured in an accident at work on December 6, 2012. AR 253. While pulling a pallet weighing approximately 1600 pounds down a ramp, Plaintiff fell onto his back when the pallet became stuck. AR 262.

Eric Sorenson, M.D., of Kings Industrial Occupational Medical Center, treated Plaintiff on December 10 and 17, 2012. AR 558-61. By the second appointment Plaintiff was "doing a lot better" and experiencing no pain in his back, buttocks, coccyx or lower extremities. AR 558. He did not require oral pain medications and relieved occasional aches and pains with Biofreeze (menthol), a topical pain reliever. AR 558.

On March 25, 2013, Dr. Sorenson reopened Plaintiff's workers' compensation claim in response to Plaintiff's complaints of persistent coccyx pain. AR 556. On April 1, 2013, Dr. Sorenson reviewed x-rays showing grade 1 retrolisthesis at the L5-S1 level, but no evidence of fracture or dislocation. AR 309, 555. He wrote:

> The patient is in no acute distress. He ambulates into the clinic with a normal gait. He is obese. Back exam has a full range of motion flexion, extension and rotation. There is no pain to palpation. The patient continues to have pain to the sacral when palpated through the rectal area. There is no evidence of any abnormalities appreciated on his exam today. Lower extremity no straight leg raises. DTR's are 2+ and motor is intact.

AR 555.

Diagnosing Plaintiff with "coccyx pain with negative x-ray," Dr. Sorenson opined that the reported symptoms did not result from Plaintiff's work injury and referred Plaintiff to his primary care physician for further investigation of other possible causes of the reported pain. AR 555.

On June 24, 2013, Plaintiff was first treated at Central Valley Comprehensive Care Industrial Services (CVCC). AR 562. His doctor (name indecipherable) diagnosed chronic coccydynia and determined that Plaintiff could return to work with restrictions that limited

3

Plaintiff to lift, carry, pull or push no more than twenty pounds and seldom bend or stoop.[3] AR 253, 562. Because Plaintiff's employer was unable to accommodate the restrictions, Plaintiff remained off work thereafter. AR 253. From July through November 2013, Plaintiff participated in physical therapy including therapeutic exercise and electrical stimulation. AR 228-52, 587-638.

On August 19, 2013, orthopedist Charles F. Xeller, M.D., conducted an agreed medical examination of Plaintiff's lower back as required by workers' compensation rules. AR 304-307. Dr. Xeller observed that Plaintiff had back pain, more right sided than left, and minor coccygeal pain. AR 306. When Plaintiff stood, he flexed his right leg and listed to the left. AR 306. Plaintiff demonstrated a full range of motion of his knees, ankles and feet. AR 306. Straight leg raising was negative. AR 306. Knee and ankle reflexes and toe and heel stand were normal. AR 306. There were no overt sensory disturbances and no thigh or calf muscle atrophy. AR 306. Dr. Xeller observed back muscle spasm. AR 306. The doctor declined to find Plaintiff permanent and stationary, and requested magnetic resonance imaging to rule out a herniated lumbar disc. AR 306. Review of Plaintiff's magnetic resonance images on November 15, 2013, indicated that Plaintiff's spine was normal other than a mild posterior disc protrusion at L4-5. AR 300. Dr. Xeller recommended an epidural steroid injection. AR 300.

On January 30, 2014, anesthesiologist and pain management specialist William von Kaenel, M.D., examined Plaintiff as a workers' compensation consultant.[4] AR 281-86. Plaintiff reported constant lumbo-sacral axial pain, which ranged from 6/10 to 7/10. AR 281. The pain was 35 percent on the left and 65 percent on the right. AR 281. Aggravating activities included sitting, transitions, bending, lifting, driving, standing and walking. AR 281. Plaintiff could walk about 80 feet before needing to stop. AR 281.

Truncal range of motion testing revealed pain with extension rotation and limited range of motion on extension and left and right lateral flexion. AR 283. Plaintiff had full strength on all reported measures except for right dorsiflexion, which was nearly normal. AR 283. Sensory

---

[3] CVCC provided handwritten progress reports completed with poor handwriting and cryptic notes.
[4] The photocopy of Dr. van Kaenel's report is so dark that portions are illegible.

4

testing of Plaintiff's lower extremities was fully intact. AR 283. Digital palpation revealed tenderness at the right and left facets. AR 284. Dr. van Kaenel diagnosed disc disorder with radiculopathy, lumbar spine pain and lumbar facet joint arthropathy. AR 285.

On March 3, 2014, Plaintiff received an epidural steroid injection at L5. AR 255-57. Dr. von Kaenel, M.D., noted that although Plaintiff's leg pain had resolved, weak toe dorsiflexion and reduced Achilles reflex on the right indicated continued radiculopathy. AR 255. Dr. von Kaenel noted that the disc protrusion at L4-5 did not cause nerve compression but had an inflammatory effect likely causing Plaintiff's gluteal pain and radiculopathy. AR 255. In his report to the workers' compensation insurer, Dr. von Kaenel wrote:

> [Plaintiff] has axial spine pain and has had no appreciable benefit after the epidural steroid injection. The patient's pain is predominant in the axial region. This potentially signifies that his pain is due to other than radicular pain. Possibilities include discogenic pain and facet joint arthropathy. AR 270.

On June 3, 2014, Dr. Riddle of CVCC filed a permanent and stationary report which stated, "Due to lack of significant MRI findings, the issue of psychological issues must be considered." AR 742.

On July 8, 2014, CVCC evaluated Plaintiff and released him to return to modified work limited to lifting, carrying, pulling or pushing no more than five pounds, and seldom climbing stairs or ladders, bending or stooping, and squatting or kneeling. AR 260.

On July 9, 2014, Plaintiff initiated a primary care relationship with United Health Centers. AR 472-74. Richard Reynolds, P.A., ordered lumbar spine x-rays and requested copies of Plaintiff's workers' compensation records. AR 474. On July 11, 2014, Brian Ewy, D.O., reviewed five x-rays of Plaintiff's lumbar spine and opined that Plaintiff's lumbar spine was normal. AR 320-21. The report of September 3, 2014, magnetic resonance imaging of Plaintiff's lumbar spine revealed hyperlordosis, mild degenerative disc disease, no impingement of nerve roots, and a 3 mm posterior disc protrusion and fissure of annulis fibrosis. AR 308.

From June 18, 2016, through March 8, 2017, Plaintiff was treated 29 times at United Health Centers, most frequently for back pain without sciatica. AR 846-963. Treating physicians were Drs. Marie Flores and Seunghun Jung. Other diagnoses included diabetes with diabetic

polyneuropathy; hip, hand and foot pain; hypertension; hyperlipidemia; nonalcoholic steatohepatis (NASH); and, earache. AR 846-963. As of March 8, 2017, Plaintiff's medications included famotidine (acid reflux), senna (constipation), colace (constipation), clortrimazole (skin rash), cyclobenzaprine (muscle relaxant), citalopram (antidepressive), trazodone (antidepressant), naprozen (pain reliever), hydrocortisone (skin rash), gabapentin (nerve pain), lisinopril (high blood pressure), pravastatin (high cholesterol and triglycerides) and metformin (diabetes). AR 846-47.

On June 20, 2015, Nader Armanious, M.D., performed an electromyogram study that revealed evidence of chronic L5 and S1 radiculopathy on the right side. AR 522-26.

On June 21, 2016, family practitioner Samuel Chan (Coast City Medical Group) requested workers' compensation authorization to perform follow-up treatment of Plaintiff 's sprained ligaments, cervical and lumbar spine, anxiety disorder and depressive disorder. AR 740-41. On June 26, 2015, he conducted an intake examination of Plaintiff noting that Plaintiff complained of constant sharp, severe, stabbing lower back pain; constant sharp and burning right hip pain; numbness of the right leg; trouble sleeping; weight gain; diabetes; high cholesterol; and, hypertension. AR 837. Plaintiff demonstrated positive straight leg raising, lumbar spine tenderness and muscle spasm; decreased right leg strength; dermatomal hyperestesia from L5 to S1; positive Lasegue's Test on the right; lower back pain on Patrick Fabere's test; and positive Milgram's test. AR 840-41. Plaintiff demonstrated reduced range of motion of the cervical and lumbar spine. AR 840-41. A coordination test was abnormal due to pain. AR 842. Dr. Chan diagnosed cervical spine sprain, lumbar spine sprain with herniated nucleus pulposa, right lower extremity radiculopathy, anxiety, depression and cephalgia. AR 842.

Thereafter, Dr. Chan saw Plaintiff thirteen times between July 24, 2015 to August 26, 2015. AR 779-834. Following each examination, Dr. Chan sent a treatment report to the workers' compensation insurer and Plaintiff's workers' compensation attorney. Dr. Chan referred Plaintiff to Dr. Ybarra for physical therapy and chiropractic treatment, and to Dr. Chang for psychological treatment of anxiety and depression. *See, e.g.,* AR 820, 828. Although the treatment notes refer to Plaintiff's continuing his medication, they do not identify the medications prescribed for Plaintiff.

On August 18, 2016, x-rays of Plaintiff's knees revealed mild bilateral osteoarthritis, bilateral patellar spurs, and a right tibial tuberosity spur. AR 535.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

7

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

### VI. **Summary of the ALJ's Decision**

The ALJ found that Plaintiff had engaged in substantial gainful activity after the alleged onset date of December 6, 2012, and did not stop working until May 2013. AR 17. His severe impairments included lumbar spine degenerative disc disease, obesity, diabetes mellitus type II with neuropathy and bilateral knee degenerative joint disease. AR 17. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). AR 19.

The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently; sit, stand and walk six to eight hours in an eight-hour workday; and, occasionally climb, balance, stoop, kneel, crouch and crawl. AR 19.

Plaintiff was not able to perform any past relevant work. AR 25. However, jobs that Plaintiff could perform existed in significant numbers in the national economy. AR 26. Accordingly, the ALJ found that Plaintiff was not disabled from December 6, 2012, through July 6, 2017 (the date of the hearing decision). AR 26.

# VII. The ALJ Properly Analyzed Medical Evidence in the Record to Determine Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ erred by failing to address treating physician Dr. Chan's opinion dated January 29, 2017, and by erroneously attributing Dr. Xeller's opinion to Dr. Chan. The Commissioner countered that the ALJ did not err in discounting Dr. Chan's opinion since it was unsupported and inconsistent with other medical opinions. The Court agrees with the Commissioner that the ALJ did not err in analyzing the medical evidence to determine Plaintiff's residual functional capacity.

## A. Medical Opinions

### 1. Agency Physicians

Agency physician A. Nasrabadi, M.D., opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, and could sit, stand or walk six hours in an eight-hour workday. AR 59. Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds. AR 59-60. Plaintiff had no manipulative, visual, communicative or environmental limitations. AR 60. Accordingly, the agency determined on initial review that Plaintiff was not disabled. AR 61. On reconsideration, agency physician E. Cooper, M.D., agreed. AR 70-71.

### 2. Permanent and Stationary Report

On June 3, 2014, John Riddle, M.D., of CVCC issued a workers' compensation permanent and stationary report. AR 262-68. Plaintiff complained that his legs felt heavy; his right hip hurt; he became numb with prolonged sitting; his lower back felt swollen; and, his pain increased with cold weather. AR 262. Dr. Riddle's physical examination revealed coccyx pain and a buttocks contusion. AR 263. An x-ray showed no injury to the coccyx and lumbosacral spine strain. AR 263. Magnetic resonance imagery revealed a mild posterior disc protrusion at L5-S1. AR 263. Dr. Riddle determined a permanent 2% whole person impairment related to Plaintiff's chronic pain. AR 263, 265.

Dr. Riddle opined that Plaintiff could lift and carry 20 pounds, both frequently and occasionally, and had limited ability to push and pull. AR 266. Plaintiff could stand, walk and sit

less than eight hours in each workday. AR 266. He could frequently reach, handle, finger, feel, see, hear and speak. AR 267. Plaintiff could occasionally climb, balance, stoop, kneel, crouch, crawl and twist. AR 267. In the written description of Plaintiff's limitations, Dr. Riddle wrote that Plaintiff was "unable [*sic*] to lift/carry & push/pull a max of 5 lbs."; "seldom climbing of stairs/ladders"; "seldom bending or stooping"; and, "seldom squatting/kneeling." AR 267. Finally, Dr. Riddle commented, "Due to lack of significant MRI findings the issue of psychological issues must be considered." AR 268.

### 3. <u>Orthopedic Consultative Opinion</u>

After examining Plaintiff on July 8, 2014, orthopedic surgeon Charles F. Xeller, M.D., twice opined that Plaintiff was at maximal medical recovery. AR 292. Plaintiff was ambulatory and used neither a back brace nor a walking stick. AR 296. He was able to drive to the appointment. AR 296. Plaintiff did not evidence acute distress, got on and off the examination table easily and had a normal gait. AR 296. Plaintiff reported some pain in his center back. AR 296. Dr. Xeller observed slight tightness on the right side only, symmetrical reflexes, and no sensory deficits in the feet. AR 296. Straight leg raising was negative. AR 296. Range of motion was full in the hips, knees, feet and ankles. AR 297. Dr. Xeller diagnosed chronic lumbar sprain/strain. AR 297.

Plaintiff rated his pain as 3/10. AR 296. Dr. Xeller found no evidence of radiculopathy and opined that Plaintiff should be rated for chronic lumbar strain at six percent. AR 292, 297. The doctor found no evidence for specific work restrictions and opined that only over-the-counter anti-inflammatory medications were indicated. AR 294, 297-98.

### 4. <u>Internal Medicine Consultative Opinion</u>

Internist Tomas Rios, M.D., performed a consultative examination of Plaintiff on May 18, 2015. AR 517-21. Dr. Rios described Plaintiff as being in mild distress and leaning to his left side while seated. AR 518. Nonetheless, Plaintiff was able to get on and off the examination table without assistance. AR 518.

Dr. Rios reviewed Plaintiff's range of motion throughout his body. AR 519-20. Straight leg raising was negative. AR 520. Muscle strength, bulk and tone were normal throughout. AR

520. Sensation and reflexes were intact in the upper and lower extremities. AR 520. Dr. Rios noted tenderness along the lumbar spine and paralumbar musculature, but no spasms or evidence of nerve root compromise on provocative movements. AR 520. The doctor diagnosed lumbar radiculitis and diabetes mellitus with no end organ damage. AR 520.

In Dr. Rios' opinion, Plaintiff was able to stand and walk up to six hours in an eight-hour workday and sit without limitations. AR 520. He could lift 20 pounds occasionally and ten pounds frequently. AR 521. Plaintiff could frequently stoop, crouch, kneel and crawl, and occasionally climb steps, stairs, ladders, scaffolds and ropes. AR 521.

### 5. **Medical Source Statements: Dr. Chan**

Treating physician Samuel Chan, M.D., completed a medical source statement on September 25, 2015. AR 527-28. Dr. Chan diagnosed cervical sprain, lumbosacral sprain, lumbosacral radiculopathy, anxiety and depression. AR 527.

Dr. Chan opined that Plaintiff could walk four city blocks before requiring rest or experiencing severe pain. AR 527. Plaintiff was able to sit 45 minutes at a time and stand for 15 minutes at a time, and needed to walk for at least five minutes every ten minutes. AR 527. Plaintiff could sit about two hours and stand and walk less than two hours in an eight-hour workday. AR 527. Because of his back pain, Plaintiff would sometimes need to take unscheduled rest breaks three or four times daily for ten minutes. AR 527. Plaintiff could rarely lift ten pounds, stoop or climb stairs. AR 528. He could never twist, crouch, squat or climb ladders. AR 528. Plaintiff had significant limitations of reaching, handling and fingering. AR 528.

Plaintiff was incapable even of low stress work. AR 528. He would have good and bad days and was likely to be absent from work at least four days a month. AR 528. He was likely to be off task 25 percent or more of the work day. AR 528.

On January 29, 2017, Dr. Chan submitted a comprehensive permanent and stationary report for workers' compensation purposes. AR 762-82. Plaintiff continued to complain of severe lower back pain with burning and numbness that radiated to the right leg. AR 765. Dr. Chan reported that Plaintiff needed help in almost all areas of personal self-care. AR 764. He

could lift and carry light to medium objects if they were conveniently positioned.  AR 764.
Plaintiff had a lot of difficulty climbing one flight of stairs; sitting for 30 minutes to one hour;
standing or walking 30 minutes to one hour; reaching and grasping an object off a shelf at eye
level; reaching and grasping an object off an overhead shelf; pushing and pulling; gripping,
grasping, holding and manipulating objects with his hands.  AR 764.  Plaintiff was unable to
perform repetitive motions such as typing on a computer; perform forceful activities with his
hands and arms; or, kneel, squat, or bend.  AR 764.  Plaintiff also had disturbed sleep; lack of
sexual function; and, severe pain that interfered with travel, recreational and social activities,
concentration and thinking, and caused emotional distress with depression and anxiety.  AR 764-
65.

In the course of Dr. Chan's physical examination of Plaintiff, Plaintiff was unable to squat
or perform a heel/toe walk.  AR 766.  Plaintiff's back had no costovertebral angle tenderness.  AR
767.  His upper extremities did not display tenderness or muscle spasm and had an unremarkable
range of motion.  AR 767.  Straight leg raising was 45 degrees on the right and 60 degrees on the
left.  AR 768.  League's Test, Patrick Fabere's test and Milgram's test were all positive.  AR 768.
Muscle power was decreased on the right lower extremity, which was numb.  AR 768.
Coordination was abnormal due to pain.  AR 768.

Disagreeing with Dr. Xeller, Dr. Chan opined that Plaintiff had lost 85 per cent of his pre-
injury ability to lift.  AR 772-73.  Overall whole person impairment was 19 per cent.  AR 774.
Dr. Chan opined that Plaintiff should not have prolonged sitting, standing or bending; twist; lift or
carry more than ten pounds; push or pull more than 20 pounds; kneel; reach overhead frequently;
or engage in prolonged walking.  AR 773.

### 6. Medical Source Statement: Dr. Flores

Plaintiff's primary care physician Marie Flores, M.D., Ph.D., M.Ph., prepared a medical
source statement on August 3, 2016.[5]  AR 531-34.  Dr. Flores treated Plaintiff for diabetes with
peripheral neuropathy, chronic lower back pain, gastric reflux disorder (GERD), high blood

---

[5] The record also includes summaries of Plaintiff's diagnoses and medications which Dr. Flores submitted in support of Plaintiff's wife's immigration application.  AR 540-43.

pressure and fatty liver. AR 531. She identified no psychological conditions that affected Plaintiff's physical condition. AR 531. Dr. Flores opined that Plaintiff could sit one hour at a time, and stand 20 minutes at a time. AR 531. He could sit about two hours and stand and walk less than two hours in an eight-hour work day. AR 531. Plaintiff could not walk at a reasonable pace on rough or uneven surfaces but could use public transportation, carry out routine ambulatory activities such as shopping and banking, and climb several stairs at a reasonable pace. AR 533. Plaintiff needed to be able to shift positions at will and needed to walk for at least five minutes every half hour. AR 531. Plaintiff was likely to need fifteen-minute breaks every two hours to accommodate muscle weakness, chronic fatigue, pain/parathesia, numbness and the adverse effects of medication. AR 532.

Plaintiff could lift and carry less than ten pounds frequently and ten pounds occasionally. AR 532. He had no limitations of reaching, handling or fingering. AR 532. He was likely to be off task 25 percent of a typical work day. AR 533. Although Plaintiff was likely to have good days and bad days, he was capable of low stress work. AR 533. He was likely to miss work about four days monthly. AR 533.

Dr. Flores prepared a second medical source statement on March 8, 2017. AR 680-83. Dr. Flores reported that Plaintiff experienced left and right side back pain, fatigue and anxiety. AR 680. Straight leg raising test was positive. AR 680. Plaintiff could walk about four blocks, sit and stand for 30 minutes at a time; sit and stand for less than two hours in an eight-hour work day; never lift any weight; never crouch, squat, or climb stairs or ladders; and rarely stoop or bend. AR 681-82. Plaintiff needed to be able to change positions at will and walk for five minutes every ninety minutes. AR 681. He would require unscheduled breaks of approximately 30 minutes every two hours. AR 681. Plaintiff did not need to elevate his legs or use a cane or other assistive device. AR 681. He was incapable of even low stress work and was likely to be off task more than 25 percent of the work day. AR 682. He was likely to miss work about four days monthly. AR 682.

///

///

13

## 7. Mental Health Opinions

On September 25, 2015, and September 8, 2016, psychologist Sokyung Chang, Ph.D., prepared medical source statements relating to Plaintiff's therapy. AR 529-30, 536-39. On January 3, 2017, clinical psychologist Greg Hirokawa, Ph.D., examined Plaintiff and provided an affidavit in support of Plaintiff's wife's legal action to avoid deportation. AR 545-51. Because Plaintiff alleges error only with regard to the ALJ's analysis of medical statements relating to his physical health, this decision does not address the opinions concerning Plaintiff's mental health.

### B. Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

### C. The ALJ Properly Analyzed Evidence in the Record as a Whole

Examining physicians and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The hearing decision set forth a comprehensive and detailed discussion of the analysis that produced the ALJ's determination of Plaintiff's residual functional capacity. AR 19-25. The ALJ determined that Plaintiff had the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently; sit, stand and walk six to eight hours in an eight-hour workday; and, occasionally climb, balance, stoop, kneel, crouch and crawl. AR 19.

In reaching that determination, the ALJ emphasized that "[d]espite evidence demonstrating the claimant has suffered from medically determinable 'severe' impairments, the evidence also demonstrates that the claimant retains the capacity to function adequately and perform many basic activities associated with work." AR 25. Specifically, Plaintiff retained the ability to shop, drive and work in the yard, demonstrating concentration, persistence, an ability to

///

use hand and foot controls, to manage the stress related to driving a motor vehicle, crouch, stoop and squat. AR 21.

The ALJ gave great weight to the opinions of the state agency physicians, finding the limitations noted to be well supported by the medical evidence and consistent with the evidence as a whole. AR 24. The ALJ noted that she "largely adopted" the agency physician's analysis in her determination of Plaintiff's residual functional capacity. AR 24.

The ALJ also gave great weight to the opinion of consultative internist Dr. Rios, which the ALJ found to be thorough and well-documented and consistent with other medical evidence of record. AR 23. The ALJ gave considerable weight to Dr. Xeller's consultative orthopedic opinion but "giving the claimant the benefit of the doubt," determined restrictions more consistent with the medical evidence as a whole than with Dr. Xeller's conclusion that Plaintiff had no work restrictions. AR 22.

Despite the special significance to be afforded the opinion of a treating physician, which is entitled to controlling weight when supported by objective medical evidence and other substantial evidence of record, the ALJ gave less weight to the opinions of Dr. Flores, contrasting the severe limitations opined by Dr. Flores with evidence of Plaintiff's own testimony about his typical activities. AR 21.

After accurately addressing Dr. Chan's two opinions in detail, the ALJ wrote:

> The doctor gives the claimant manipulative restrictions, when there is no evidence supporting this, which undermines his opinion. Just four months earlier, consultative examiner Tomas Rios had not observed any problems during range of motion testing. Most importantly, the doctor changed his assessment after obtaining further diagnostic work, and opined the claimant had no work restrictions. Greater weight has been accorded this later assessment.

AR 23 (citations to exhibits omitted).

16

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755).

An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995). An ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan,* 169 F.3d at 601. An ALJ properly rejects medical opinions that fail to explain the extent or significance of a claimant's condition. *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir.1999). In short, an ALJ need not accept a medical opinion that is brief, conclusory, inadequately supported by clinical findings, or based on the claimant's noncredible testimony. *Thomas,* 278 F.3d at 957.

As is always the case in an appeal of the Commissioner's denial of disability benefits, Plaintiff would construe the evidence differently than the ALJ. Nonetheless, the ALJ's analysis complied with the legal principles set forth above, which guided her analysis of the evidence in this case. As stated above, even if the evidence could arguably support either interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### VIII. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of

the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Juan Carlos Cruz.

IT IS SO ORDERED.

Dated: **June 21, 2019**     **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE